NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IDT Corp. et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 11-4992 (ES) |
| Unlimited Recharge, Inc., et al. | OPINION |
| Defendants. | |

**SALAS, District Judge.**

This matter comes before the Court by way of Plaintiffs' Motion for Temporary Restraints and a Preliminary Injunction. On August 31, 2011, Chief Judge Brown issued a Temporary Restraining Order (CM/ECF No. 7) as to defendants Unlimited Recharge, Inc. ("UDR"), Carlos Gomez, Antonio Gomez, Natalie Orsono, Cintia de la Cruz, and Roosevelt Rodriguez (collectively, "Defendants"). At oral argument held on September 15, 2011, the parties stipulated that the temporary restraints would remain in full force and effect pending the Court's ruling on the instant motion. The Court has considered the submissions made in support of and in opposition to the motion. For the reasons set forth below, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

**I.    The Parties**[1]

Plaintiffs IDT Corporation and IDT Telecom, Inc. (collectively, "Plaintiffs" or "IDT") are Delaware corporations with their principal place of business at 520 Broad Street, Newark,

---

[1] The following allegations are taken from Plaintiffs' complaint..

New Jersey 07102. IDT is in the telecommunications industry, and markets, among other products, prepaid and rechargeable international calling cards.

Plaintiff Union Telecard Alliance LLC ("UTA") is a Delaware limited liability company with its principal place of business at 520 Broad Street, Newark, New Jersey 07102.[2]

Unlimited Recharge, Inc. ("UDR" or "Unlimited Recharge") is a New Jersey corporation. UDR sells prepaid and rechargeable calling card products and related telecommunication services.

The Individual Defendants are Antonio Gomez, Carlos Gomez, Natalie Orsono, Cintia de la Cruz, and Roosevelt Rodriguez. Antonio Gomez is the sole owner of record of Unlimited Recharge. Carlos Gomez is the business partner of his brother, Antonio Gomez. Natalia Osorno is Unlimited Recharge's Operations Officer. Cintia de la Cruz is an employee, distributor, or consultant of Unlimited Recharge. Roosevelt Rodriguez is an employee of or affiliated with Unlimited Recharge.

## II.     Background[3]

In 2008, IDT launched a telecommunications product, service, and payment network under the BOSS REVOLUTION$^{SM}$ trade name and service mark (the "BOSS REVOLUTION Mark" or the "Mark"). IDT enlists master agents and retailers to sell the BOSS REVOLUTION$^{SM}$ system and its related products to consumers. These master agents and retailers transact with IDT through the BOSS REVOLUTION$^{SM}$ web-based portal. The relevant

---

[2] Prior to June 16, 2009, IDT owned fifty-one percent of UTA, which acted as IDT's distribution entity for IDT's prepaid calling cards and other telecommunications products and services. The remaining forty-nine percent of UTA was owned by UTCG Holdings, LLC ("UTCG"), a Delaware limited liability company founded by defendant Carlos Gomez. On June 16, 2009, IDT Telecom, Inc. entered into an agreement with UTCG and Carlos Gomez pursuant to which IDT purchased UTCG's forty-nine percent interest in UTA and thereafter UTA became a wholly owned subsidiary of IDT.

[3] The following allegations are taken from Plaintiffs' complaint.

product to this case is IDT's BOSS REVOLUTION<sup>SM</sup> international calling service which allows consumers to register a phone number, fund their account and use the BOSS REVOLUTION<sup>SM</sup> calling service to make international calls without the need for a physical calling card or PIN.

The marketing team employed at UTA included the Individual Defendants. Plaintiffs allege that the Individual Defendants – through their former employment by or affiliation with Plaintiffs – had access to confidential and proprietary information of IDT and UTA, including all aspects of the development, marketing, and sale of the BOSS REVOLUTION<sup>SM</sup> system and products, as well as IDT's and UTA's business plans, trade secrets, distribution network (both wholesale and retail), customer information (both wholesale and retail), cost and pricing information, marketing techniques, and financial information.

Defendant UDR was incorporated and launched in or around October 10, 2010. Defendant UDR markets and sells a product and system under the names and marks "PIN Revolution" and, alternatively, "PIN Evolution." Plaintiffs allege that this is an identical product to BOSS REVOLUTION. Defendant UDR's products and services associated with the names and marks "PIN Revolution" and "PIN Evolution" are directly advertised to the same retailers, distributors, customers and consumers to whom IDT markets its BOSS REVOLUTION<sup>SM</sup> products and services, including individual consumers, distributors, and retailers in IDT's target demographics and regions, and by means of identical advertising slogans and the same system of promotions and incentives.

Plaintiffs further allege that Luisa Martinez, a salesperson for Defendant UDR, approached one of IDT's retailers, EI Nino Discount, located in Miami, Florida, and stated that BOSS REVOLUTION<sup>SM</sup> was going out of business, but offered to sell the PIN Revolution set of products and services as a replacement, thereby willfully causing actual confusion among

participants in the BOSS REVOLUTION<sup>SM</sup> network as to the origin, source, and/or endorsement of Defendant UDR's products and services. In addition, defendants Natalia Osorno and Roosevelt Rodriguez have approached several of IDT's partners and retailers who sell BOSS REVOLUTION<sup>SM</sup> and offered to sell them PIN Evolution or PIN Revolution products and services.

### a. The Non-Disclosure Agreements

Plaintiffs allege that Defendants Antonio Gomez, Roosevelt Rodriguez, and Cintia de la Cruz entered into non-disclosure agreements ("NDA" or "NDAs") with IDT and/or UTA. The NDAs provide, in relevant part, that

> [d]uring the Employment and thereafter, the parties agree that Employee will not: (i) use the Confidential Information, however acquired, except as necessary within the scope of Employment with [IDT] to perform his duties, (ii) duplicate or replicate or cause or permit others to duplicate or replicate any document or other material in any medium embodying any Confidential Information except as necessary in connection with Employment, and (iii) disclose or permit the disclosure of any Confidential Information to any person, without the prior written consent of [IDT].

### b. Alleged Misappropriation of IDT's Trade Secrets

Plaintiffs further allege that the Individual Defendants joined together in working for Defendant UDR and began using Plaintiffs' proprietary information to launch Defendant UDR's competing PIN Revolution /PIN Evolution product, and have used Plaintiffs' proprietary customer and retailer lists, as well as Plaintiffs' proprietary business model and marketing plans, to target Plaintiffs' existing and prospective retailer base, consumer base, and distributor base.

### III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotations omitted). This is particularly true where affirmative relief is sought. *See*

*Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity."). A court may grant a preliminary injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708. A party must produce sufficient evidence of all four factors -- and a district court should weigh all four -- for the requested injunctive relief to be awarded. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Nonetheless, a district court's decision to issue a preliminary injunction is discretionary. *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006).

## IV. DISCUSSION

### a. Count One – Trademark & Trade Dress Infringement

Count One of Plaintiffs' complaint alleges both trademark and trade dress infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). The Court will first address trademark infringement and then turn to trade dress infringement.

#### i. Trademark Infringement

In order to establish trademark infringement (Count I) and – in the context of the instant application for preliminary injunctive relief – a likelihood of success on the merits, Plaintiff must demonstrate that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the mark is likely to cause confusion concerning the origin of the goods and services. *See Optician Ass'n. of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). At oral argument, Defense counsel conceded – for purposes of the

instant motion – that the marks at issue in this case are (1) valid and legally protectable and (2) owned by the Plaintiffs. *See* Sept. 15, 2011 Hr'ing Trans. at 23: 6-7. Therefore, the Court need only consider the third element, namely whether the Defendant's use of the mark is likely to cause confusion concerning the origin of the goods and services. In this context, the Third Circuit applies the ten-part "Lapp" test to determine whether there is a likelihood of consumer confusion between goods -- whether they directly compete or not. *A & H Swimwear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983). The *Lapp* factors are:

1) The degree of similarity between the owner's mark and the alleged infringing mark;

2) The strength of the owner's mark;

3) The price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

4) The length of time the defendant has used the mark without evidence of actual confusion arising;

5) The intent of the defendant in adopting the mark;

6) The evidence of actual confusion;

7) Whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

8) The extent to which the targets of the parties' sales efforts are the same;

9) The relationship of the goods in the minds of the consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

10) Other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*A & H Sportswear*, 237 F.3d at 215. Plaintiff need not establish all ten factors to demonstrate that there is a likelihood of confusion. In fact, a likelihood can be found even if a majority of the factors do not show confusion. *Id.* at 216. They are not to be "mechanically tallied," but are rather tools to guide a qualitative decision. *Id.* at 216.

Strikingly, Plaintiff's papers in support of the instant application do not apply the *Lapp* factors, but instead state that "it could not be clearer that Defendants are directly using blatant copies of Plaintiff's BOSS REVOLUTION$^{SM}$ Mark and trade dress in the advertising of their competing 'PIN Revolution' or 'PIN Evolution' products." (Pl. Br. 24). Rather than applying the Third Circuit's ten-part "Lapp" test to articulate a likelihood of consumer confusion, Plaintiffs ask this Court to infer trademark infringement from their allegations that (1) UDR was created by a former UTA executive, (2) UDR is operated by former IDT or UTA employees, (3) Defendants have used certain of Plaintiffs' confidential and proprietary customer and retailer lists, as well as Plaintiff's proprietary business model and marketing plans, (4) Defendants attempted to solicit and bribe a current IDT employee to obtain a specific customer list, (5) Defendants offered financial incentives to Plaintiffs customers to sell Defendants product instead of Plaintiffs product, and (6) telling Plaintiffs' customers that IDT was going out of business. (Pl.'s Br. at 24-25). In sum, Plaintiffs ask this Court to find that where there is smoke, there is fire. This, however, is not the test. In order to receive the extraordinary relief requested, it is <u>Plaintiffs' burden</u> (and not the Court's burden) to make a showing of likelihood of success on the merits by demonstrating that there is a likelihood of confusion between the marks when applying the *Lapp* factors. Here, by not applying the *Lapp* factors, Plaintiff has failed to make a showing

of likelihood of success as to Count One (Trademark Infringement) and, therefore, Plaintiff's application for injunctive relief is denied without prejudice.[4]

### ii. Trade Dress Infringement

Count One of Plaintiff's complaint also alleges trade dress infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). To establish trade dress infringement (Count I), a plaintiff must show: "(1) the allegedly infringing design is non-functional, (2) the design is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (citation omitted). An action in trade dress is also measured by the same standards as trademark infringement. *A & H Sportswear Co.*, 166 F.3d at 204; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992). To decide whether there is a likelihood of confusion the Third Circuit applies the ten-part *Lapp* test. *McNeil Nutritionals, LLC*, 511 F.3d at 358. Here, Plaintiffs application for injunctive relief is denied without prejudice for the same reasons as articulated above, namely Plaintiffs' failure to establish a likelihood of success by applying the "Lapp" test.

### b. Count Two – False Designation of Origin

Count Two of Plaintiffs' complaint alleges false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1). Trademark infringement (Count I) and false designation of origin and unfair competition (Count II) are measured by identical standards. *A & H Swimwear, Inc.*, 237 F.3d at 210. "To prove either form of a Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally

---

[4] Additionally, although the Court finds the allegation that Defendants approached one of Plaintiffs' retailers and falsely stated that BOSS REVOLUTION was going out of business and offered to sell him Defendants' product concerning, this allegation alone is insufficient to carry Plaintiffs' heavy burden at this stage of the litigation. *See* Compl. ¶ 39; *See also* Pl's Mv'ing Br. 13-14; *See also* Declaration of Alba Paguada in Supp. of App. ¶¶3-4;.

8

protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *Id*. (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)). As to the third prong, "[a] likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.* (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir.1992) (internal quotation marks omitted)). To decide whether there is a likelihood of confusion the Third Circuit applies the ten-part "Lapp" test. *Id*. Here, Plaintiffs' application for injunctive relief at to Count II (false designation of origin and unfair competition) is denied without prejudice for the same reasons as articulated above under Count One, namely Plaintiffs' failure to establish a likelihood of success under the *Lapp* test.

### c. Count Three: Copyright Infringement[5]

IDT alleges that it "is the owner of the exclusive copyright in Copyrighted Advertising, in both its decal and banner form." (Compl. ¶ 63). The Court will first address Plaintiffs' application with respect to the decal form and then move to the banner form.

#### i. Copyright Infringement of the Decal Form

In order to establish copyright infringement and – in the context of the instant application for preliminary injunctive relief – a likelihood of success on the merits, a party must a plaintiff

---

[5] At oral argument, Defendants raised the question of whether or not this Court may exercise subject matter jurisdiction over a copyright infringement claim where the Plaintiff has filed an application, but has not yet obtained an actual registration. The Court, therefore, asked for supplemental briefing on this question. Upon review of the supplemental papers and the case law submitted in support thereof, it is clear that the Section 411(a)'s registration requirement is not jurisdictional in nature. *See Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1241 (2010) ("Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."). Therefore, Defendants' contention that Plaintiffs' failed to satisfy Section 411(a)'s registration requirement prior to filing this action and application for injunctive relief, even if true, does not disturb this Court's subject matter jurisdiction over Plaintiffs' copyright infringement claim.

must prove two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). A copyright registration certificate is prima facie evidence sufficient to meet the first prong of the analysis. *See* 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods.*, Inc., 930 F.2d 277, 290 (3d Cir.1991). Here, Plaintiffs have satisfied the first prong by submitting a copyright registration certificate for the decal. (*See* Exh. A to Declaration of Gary Ruckelshaus in Support of Pl.'s Supp. Br.).

The second "copying" prong can be satisfied either through (1) direct evidence, or (2) established inferentially by showing (a) that defendant had access to the copyrighted work and (b) that the allegedly infringing work is "substantially similar" to the copyrighted work. *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1231-32 (3d Cir.1986) (internal citations omitted). Although a jury is the ultimate trier of fact in the present case, it is proper for the Court at this juncture to consider the similarity of the works to determine whether it is likely that Plaintiffs will prevail on the merits or, in other words, persuade the jury that there is substantial similarity of expression and that, therefore, Defendants have infringed their work.

Here, Plaintiffs have not submitted any direct evidence of copying. Therefore, the Court must determine whether copying may be inferred. As employees of IDT, it is clear that the Individual Defendants had access to the decal. Thus, the Court now turns to whether the decals are "substantially similar." There are two conjunctive considerations for determining "substantial similarity." *See Dam Things From Denmark v. Russ Berrie & Co*., 290 F.3d 548, 561 (3d Cir. 2002). First, the fact-finder must decide whether there is sufficient similarity between the works at issue "in order to conclude that the alleged infringer copied the work." *Id*. at 562 (citing *Whelan Assocs., Inc.* 797 F.2d at 1232). If the first consideration is answered affirmatively, the

fact-finder must then decide, without the aid of expert testimony, whether a "'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work." *Id.* The second consideration has also been described as determining "whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id*.

To that end, the Court requested that both parties submit samples of their respective decals. Bearing in mind that words and short phrases such as names, titles, and slogans are not copyrightable, the Court will now compare the works at issue. *See Douglas v. Osteen*, 317 F. App'x. 97, 99 (3d Cir. 2009)( "words and short phrases are excluded from copyright protection"); *see also Jarvis v. A & M Records*, 827 F. Supp. 282, 291–92 (D.N.J. 1993) (clichéd language, phrases, and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, are not subject to copyright protection, nor are easily arrived at phrases and chord progressions). Plaintiffs' decal is a circle filled with a vibrant red background and thin white border. In the center of the decal is a cartoon illustration of a human hand holding a cellular phone above the words "Boss Revolution." Plaintiffs' brand logo is prominently displayed in lower right quadrant. Defendants' decal, on the other hand, is an octagon filled with a muted orange background and no border. In the center of the decal is a rectangle containing the text "PIN Evolution." Defendants' brand logo is prominently placed on the upper right quadrant.

This Court finds that the works at issue lack sufficient similarity to conclude that the alleged infringer "copied the work." Based on the Court's examination of the works, as articulated above, Defendants' decal, though similar in size to Plaintiffs' decal, is a different geometric shape, employs a distinctly different color scheme, does not feature a cartoon illustration (nor anything remotely akin to a cellular phone grasped by a hand), and prominently

11

displays Defendants' own brand logo. Further, even assuming *arguendo* the Court found the works to be sufficiently similar to conclude that Defendants copied the work, an ordinary observer would detect the disparities described above, rather than overlook them or regard them as being substantially the same. Thus, Plaintiffs' application for a preliminary injunction with respect to copyright infringement over the decal is DENIED for failure to demonstrate a likelihood of success on the merits.

### ii. Copyright Infringement of the Banner Form

Plaintiffs also assert copyright infringement of the banner form of its advertising. Again, in order to establish copyright infringement and – in the context of the instant application for preliminary injunctive relief – a likelihood of success on the merits, Plaintiffs must prove two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright registration certificate is prima facie evidence sufficient to meet the first prong of the analysis.

Here, although Plaintiffs allege that "on August 19, 2011, IDT registered copyrights in the Copyrighted Advertising with the Register of copyrights for the United States Copyright Office" (*See* Compl. ¶ 65), said allegation is not supported by "Exhibit D" to the Verified Complaint. Specifically, the "Copyright Registrations" attached to the Verified Complaint are not registrations, but rather are *applications* for registration. Although Plaintiffs were able to cure this deficiency with respect to the decal form by submitting a copyright registration certificate, Plaintiffs have not presented the Court with a copyright registration certificate for the banner form. In light of the Supreme Court's holding that "Section 411(a)'s registration

requirement is a precondition to filing a claim," evidence of an *application* for registration is insufficient to establish a likelihood of success on the merits at this stage. *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010).

However, even assuming *arguendo* that Plaintiffs established the first prong of the analysis, the Court finds that Plaintiffs have also failed to satisfy the second prong. Here again, Plaintiffs have not submitted any direct evidence of copying. Therefore, the Court must determine whether copying may be inferred. As employees of IDT, it is clear that the Individual Defendants had access to the banner form. Thus, the next inquiry is whether the banners are "substantially similar" in accordance with the standard articulated above.

To that end, the Court requested that both parties submit samples of their respective banners. Plaintiffs' banner is a rectangle filled with a vibrant red background and border comprised of a thin white line and thin black line. In the center of the banner is a cartoon illustration of a human hand holding a cellular phone above the words "Boss Revolution." Plaintiffs' brand logo is prominently displayed in lower right corner of the banner. Defendants' banner, although also rectangular, is filled with a muted orange background and bordered by a thin green line and thin black line. In the center of the banner is a solid blue circle containing the text "PIN Evolution." Defendants' brand logo is prominently placed in the lower right corner.

This Court finds that the works at issue lack sufficient similarity to conclude that the alleged infringer "copied the work." Based on the Court's examination of the works, as articulated above, Defendants' banner, though similar in size to Plaintiffs' banner, employs a distinctly different color scheme, does not feature a cartoon illustration (nor anything remotely akin to a hand clutching a cellular phone), presents an eye-catching blue circle in the center of

the work, and prominently displays Defendants own brand logo. Further, even assuming *arguendo* that the works are sufficiently similar to conclude that Defendants copied the work, an ordinary observer would detect the disparities articulated above, rather than overlook them or regard them as being substantially the same. Thus, Plaintiffs' application for a preliminary injunction with respect to copyright infringement over the banner is DENIED for failure to demonstrate a likelihood of success on the merits.

### d. Count Four: Misappropriation of Trade Secrets and unfair competition.[6]

In an action for misappropriation of a trade secret, a party must demonstrate the following under New Jersey law: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982).

A trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Rohm and Haas Co.*, 689 F.2d at 431. In assessing trade

---

[6] *See Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, 2010 WL 3772543, N.J. Super. A.D., 2010. ("New Jersey courts have noted that, in essence, unfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business. *See, e.g., N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427, 365 A.2d 956 (Ch. Div. 1976), aff'd, 160 N.J. Super. 81, 388 A.2d 1299 (App. Div. 1978). "The misappropriation usually takes the form of the 'palming off' or 'passing off' of another's goods as [one's] own...." *Id.* at 428, 365 A.2d 956. However, the tort has also been described in broader terms: "There is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 172, 561 A.2d 694 (1989). The common law tort of unfair competition historically has been considered a subspecies of the class of torts known as tortious interference with business or contractual relations. *See* Restatement (Third) of Unfair Competition § 1 comment g (1995).").

secrets, courts generally look to six factors to determine whether a given idea or information is a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 542 A.2d 879, 893 (N.J. 1988). Here, the Court cannot engage in the relevant analysis because Plaintiffs have failed to identify the idea or information they allege to be a "trade secret" with a sufficient degree of particularity.

In order to receive the extraordinary relief requested, it is <u>Plaintiffs' burden</u> (and not the Court's burden) to make a showing of likelihood of success on the merits. Here, Plaintiffs have failed to allege with sufficient particularity what, if anything, the Individual Defendants have unlawfully disclosed to Plaintiffs competitors. As such, Plaintiffs' application for injunctive relief as to Count Four (Misappropriation of Trade Secrets and Unfair Competition) is denied without prejudice.[7]

---

[7] Plaintiffs rely on *Nat'l Starch and Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158, 162 (App. Div.1987) for the proposition that "a court should enjoin an individual from working for an employer where it is inevitable that the individual will disclose or use confidential, proprietary and/or trade secret information of a former employer." (Pl. Mv'ing Br. 26). This argument, however, is predicated on the existence of a confidential, proprietary and/or trade secret information. For the reason set forth above, Plaintiffs application fails to allege what they seek to protect with sufficient particularity. Therefore, even assuming *arguendo* that Plaintiffs' reliance on a theory of "inevitable disclosure" is viable, the Court cannot discern from either the face of the complaint or the papers submitted in support of the instant application what specific confidential, proprietary, and/or trade secret information may be subject to inevitable disclosure.

### e. Count Eight: Breach of Contract

Count Eight alleges that the Individual Defendants (with the exception of Carlos Gomez) breached their non-disclosure agreement. In order to state a claim for breach of contract and – in the context of the instant application for preliminary injunctive relief – a likelihood of success on the merits under New Jersey law, a plaintiff must show: (1) the existence of a contract, (2) a material breach of the contract by the defendant, and (3) damages resulting from the breach. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006), aff'd, 482 F.3d 247 (3d Cir. 2007). The Individual Defendants papers in opposition to the instant application do not take a position on the validity of contract at issue.  Therefore, the Court will focus of the second element of the analysis namely whether there was a material breach of the non-disclosure agreement by the Individual Defendants. As part of this analysis the Court must necessarily determine if the information alleged to have been improperly disclosed is likely to be confidential in nature. Under New Jersey law, information need not rise to the level of a trade secret to be protected. In *Platinum Management, Inc. v. Dahms*, 285 N.J. Super. 274, 295 (Law Div. 1995), the court held that to be legally protected, the information need not constitute a trade secret, and indeed, may otherwise be publicly available. Information provided to the Individual Defendant by IDT, in the course of employment, and for the sole purpose of servicing IDT's customers, is legally protectable as confidential and proprietary information. *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285 (2001).  The key to determining the misuse of such information is the relationship of the parties at the time of disclosure and the intended use of the information. *Id*. (citing *Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1407-10 (3d Cir.1985)). Therefore, in order to determine whether Plaintiffs can show a likelihood of success the Court must know the specific information that is alleged to be a trade secret.

Here, however, Plaintiffs have not alleged with any level of specificity what information they are seeking to enjoin the Individual Defendants from disseminating, but rather state that "Defendants breached their written obligations under the Non-Disclosure Agreements by improperly divulging or using Plaintiffs' trade secrets and confidential and proprietary information to one of IDT's direct competitors." (Pl. Mv'ing Br. 29).  Although Plaintiffs' may ultimately be entitled to some form of injunctive relief, the Court is unable to determine Plaintiffs' likelihood of success given the broad nature of Plaintiffs' application. Accordingly, Plaintiffs' application for injunctive relief as to Count Eight (Breach of Contract) is denied without prejudice to file a more focused application.

### f.  Count Ten:  Antonio Gomez's Breach of Non-Compete Agreement

Count Ten alleges that Antonio Gomez breached his covenant not to compete. Defendant Antonio Gomez executed a covenant not to compete with UTA for a period of two years immediately following the date on which his employment with UTA was terminated (the "Non-Compete Agreement"). As alleged in Plaintiffs' complaint, the Non-Compete Agreement provides:

> [Gomez] hereby covenants and agrees that … for a period of two (2) years immediately following the termination of his Employment with the Company, he shall not, without the express written consent of [UTA], directly or indirectly, either as an employee, employer, consultant, independent contractor, agent, principal, partner, stockholder, officer, director or in any other individual or representative capacity, engage or participate, invest in or become employed by or otherwise in any way assist or encourage any entity or person, which engages in any activity in competition directly or indirectly with the business of [UTA], including without limitation by engaging or otherwise involving [ ... ] (i) the sale or distribution of any telecommunications products, equipment or services, including, without limitation ... any [ ] form of telephony, prepaid or post-paid debit phone cards[.]

(*See* Non-Compete Agreement attached to Complaint as Exhibit C.)

Under New Jersey law, in order to establish a breach of a non-compete agreement and – in the context of the instant application for preliminary injunctive relief – a likelihood of success on the merits, a party must satisfy the following elements: "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties." *Hutchinson v. Del. Sav. Bank FSB, et al.*, 410 F.Supp.2d 374, 385 n.21 (D.N.J. 2006).

Antonio Gomez does not dispute that he signed a non-disclosure and non-competition Agreement on April 24, 2002. (*See* Def.'s Br. at 8; *see also* A. Gomez Aff. ¶5). Mr. Gomez does, however, contend that the Agreement expired in May 2010. Plaintiff, on the other hand, contends that Mr. Gomez "executed and tendered a resignation letter to Plaintiff on June 24, 2009 (making clear that his non-competition agreement did not expire until June 24, 2011)." (*See* Pl. Reply Br. 13).

Assuming *arguendo* that Plaintiff's theory is correct and Antonio Gomez's non-competition agreement expired on June 24, 2011, then any restrictions stemming from that agreement expired before the filing of Plaintiffs' complaint and application for restraints. Stated differently, even if Plaintiffs were able to show a likelihood of success on this claim, under their own theory of the case Antonio Gomez was free to compete with Plaintiffs beginning on June 24, 2011. Plaintiffs have not directed the Court to any authority supporting their contention that this Court may enter the requested restraints where – by their own admission – any obligation under the non-compete agreement has already expired. Accordingly, Plaintiff's application for injunctive relief as to Count Ten (Antonio Gomez's Breach of Non-Compete Agreement) is denied.

### g. Count Twelve: Conversion

Plaintiffs' application does not articulate the elements of a conversion claim in the context of the specific facts of this case. Moreover, none of the cases cited by Plaintiffs in the instant application squarely address the elements of a conversion claim. As such, the Court is unable to analyze whether Plaintiff has demonstrated a likelihood of success on the merits for this particular claim. Accordingly, Plaintiffs' application for injunctive relief as to Count Twelve (Conversion) is denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' application for preliminary restraints is DENIED. An appropriate order accompanies this opinion.

/s/ Esther Salas  _____  
**United States District Judge**