NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

IDT CORPORATION; IDT TELECOM, INC; : 
and UNION TELECARD ALLIANCE, LLC, :
                               :
          **Plaintiffs,** :
      v. :       CIVIL ACTION NO.  11-4992 (ES)
                               :
UNLIMITED RECHARGE, INC.; CARLOS :       OPINION
GOMEZ; ANTONIO GOMEZ; NATALIA :
OSORNO; CINTIA DE LA CRUZ; and :
ROOSEVELT RODRIGUEZ, :
                               :
          **Defendants.** :
_____ :

**SALAS, District Judge.**

Now pending before this Court is Defendant Unlimited Recharge, Inc. ("UDR"), Defendant Carlos Gomez ("C. Gomez"), Defendant Antonio Gomez ("A. Gomez"), Defendant Natalia Osorno ("Osorno"), and Defendant Roosevelt Rodriguez's ("Rodriguez," and, collectively with UDR, C. Gomez, A. Gomez and Osorno, "Defendants," and each an "Individual Defendant[1]") joint motion to dismiss Plaintiff IDT Corporation ("IDT Corp."), Plaintiff IDT Telecom, Inc. ("Telecom," and, together with IDT Corp., "IDT"), and Plaintiff Union Telecard Alliance, LLC's ("UTA," and, collectively with IDT Corp. and Telecom, "Plaintiffs") First Amended Verified Complaint (Docket Entry No. 40, ("Compl.")) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has considered the briefs submitted in support of and in opposition to the present motion, and

---

[1] Plaintiffs also brought this lawsuit against Defendant Cinita De La Cruz.  Ms. De La Cruz was served on October 25, 2011 but has not appeared in this matter and does not join in this motion to dismiss.  (Docket Entry No. 28).

decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I.    JURISDICTION

The Court has original jurisdiction over Counts I and II of the First Amended Verified Complaint pursuant to 28 U.S.C. § 1331 because those counts arise under Federal law.  The Court exercises supplemental jurisdiction over the remaining counts of related state law claims pursuant to 28 U.S.C. § 1367(a).

## II.    BACKGROUND

Plaintiffs IDT Corp. and Telecom are Delaware corporations with their principal place of business at 520 Broad Street, Newark, New Jersey 07102.  (Compl. ¶ 7).  Plaintiff UTA is a Delaware limited liability company with its principal place of business at 520 Broad Street, Newark, New Jersey 07102.  (*Id.* ¶ 8).  UTA is a wholly owned subsidiary of IDT.  (*Id.* ¶ 8 n.1). IDT is a telecommunications company that sells voice-over-internet services, local and long distance telecommunications services, and prepaid, rechargeable international calling cards.  (*Id.* ¶ 7).  UTA acts as IDT's distribution entity for IDT's products.  (*Id.* ¶ 8).

Defendant UDR is a New Jersey corporation with its principal place of business at 181 Jones Road, Englewood, New Jersey 07631.  (*Id.* ¶ 9).  Defendant A. Gomez is a resident of New York, and is the sole owner of UDR.  (*Id.* ¶ 10).  Defendants C. Gomez and Osorno, also residents of New York, allegedly "direct[] and continue[] to direct the activities of UDR."  (*Id.* ¶ 11).  Defendant Rodriguez is a resident of New Jersey, and was or is employed by Defendant

UDR.  (*Id.* ¶ 14).  Defendants A. Gomez, C. Gomez, Osorno, and Rodriguez are all former employees, consultants or owners of UTA and/or IDT.[2]  (*Id.* ¶ 21).

As a condition of employment with IDT and/or UTA, Defendants A. Gomez, Osorno,[3] and Rodriguez entered into non-disclosure agreements (the "Non-Disclosure Agreements") protecting "'Confidential Information' mean[ing] technical and business information . . . including, without limitation, any and all proprietary Inventions, customer and potential customer names, product plans and designs, license and other agreements, marketing and business plans, various other financial and businesses [sic] information of [the] Company." (Compl. ¶¶ 93-97, Ex. C).  The non-disclosure agreements provide that "[d]uring the Employment and thereafter, the parties agree that Employee will not: (a) use Confidential Information, however acquired, except as necessary within the scope of employment with the Company to perform his/her duties . . . (c) disclose or permit the disclosure of any Confidential Information to any person, without the prior written consent of Company."  (*Id.*).  Defendant A. Gomez also executed a covenant not to compete with UTA (the "Non-Compete Agreement") for a period of two years after termination of his employment.  (*Id.* ¶ 98, Ex. D).  This agreement prohibits A. Gomez from disclosing the Proprietary Information and from competing with UTA or IDT in the market for sale and distribution of any telecommunications products, equipment or services.  (*Id.* ¶ 99-100, Ex. D).

In 2008, IDT created the BOSS REVOLUTION[SM] line of prepaid telecommunications products and services.  (*Id.* ¶¶ 22-24).  On April 11, 2011, IDT filed an application with the United States Trademark and Patent Office for registration of its BOSS REVOLUTION[SM]

---

[2] Defendant C. Gomez was a consultant to UTA.  (Compl. ¶ 74).  Defendant A. Gomez was the Chief Executive Officer of UTA.  (*Id.* ¶ 78).  Defendant Osorno was the Accounts Receivable Manager at UTA.  (*Id.* ¶ 83). Defendant Rodriguez was involved with sales at UTA, and at some point served as Route Manager for UTA.  (*Id.* ¶ 91).
[3] Osorno's agreement is not attached to the Amended Complaint.

service mark in the Principal Register.   (*Id.* ¶ 32, Ex. A).   The BOSS REVOLUTION[SM] international calling service allows customers to register a phone number, fund their account and make international calls without a physical calling card or PIN number.   (*Id.* ¶ 26).   Primarily through UTA, IDT transacts with master agents and retailers to sell BOSS REVOLUTION[SM] products and services to consumers via an online portal.   (*Id.* ¶ 25).   IDT customers can also replenish their calling card balances through these retailers.   (*Id.* ¶ 27).

IDT attributes the success of its BOSS REVOLUTION[SM] product to certain proprietary information allegedly known only to Plaintiffs.   This information (the "Proprietary Information") includes lists of distributors, retailers and agents who transact with IDT to sell the BOSS REVOLUTION[SM] product; lists of end-user consumers of the BOSS REVOLUTION[SM] product; pricing and marketing strategies for the BOSS REVOLUTION[SM] product; accounting, accounts receivable, and payment records; market demographics for the BOSS REVOLUTION[SM] product; sales and market data; advertising strategies, and market analyses of the impact of BOSS REVOLUTION[SM] advertising.   (*Id.* ¶ 30).   IDT asserts that its marketing campaign has created a substantial customer base and valuable goodwill towards its BOSS REVOLUTION[SM] product.   (*Id.* ¶ 34).   IDT claims that none of its competitors have been able to develop the technology, marketing strategies, or nationwide presence that make the BOSS REVOLUTION[SM] product so unique and successful.   (*Id.* ¶ 43).   IDT also claims that it goes to great lengths to maintain the confidentiality of the Proprietary Information.   (*Id.* ¶ 103-05).

On June 16, 2009, Defendant A. Gomez left the employ of UTA.   (*Id.* ¶ 78).   Defendant Rodriguez's employment with UTA terminated on June 30, 2009.   (*Id.* ¶ 91).   On November 13, 2009, Defendant Osorno's employment with UTA terminated.   (*Id.* ¶ 85).

On or about October 10, 2010, Defendant UDR was incorporated and launched.  (*Id.* ¶ 46).  "Recently," Plaintiffs discovered that UDR had placed a product on the market under the name "PIN Revolution," "PIN Evolution," and/or "Solo Pin."  (*Id.* ¶ 48).  The UDR website describes this product as a "revolutionary system for PIN-less top-up."  (*Id.* ¶ 50).  UDR's product allows consumers to purchase prepaid international calling accounts without the need for a calling card or PIN number.  (*Id.*).  UDR also markets its products to consumers through web-based portals operated by master agents and retailers.  (*Id.*).

Plaintiffs allege that UDR copied the BOSS REVOLUTION[SM] trade dress and therefore UDR's trade dress is confusingly similar to their own BOSS REVOLUTION[SM] product.  (*Id.* ¶ 64-66).  Plaintiffs also allege that Defendants A. Gomez, C. Gomez, Osorno and Rodriguez used their knowledge of the Proprietary Information from their period of employment with UTA in order to launch UDR and compete with IDT.  (*Id.* ¶¶ 74-88, 91-92, 111).  Specifically, Plaintiffs allege that Defendants have contacted "one or more of IDT's BOSS REVOLUTION[SM] retail customers and prospective customers" and falsely represented to those customers that UDR's products and services were "exactly the same" or a "new and improved" version of IDT's BOSS REVOLUTION[SM].  (*Id.* ¶ 68).  In at least one alleged instance, a salesman for Defendant UDR allegedly falsely represented to El Nino Discount, an IDT retailer in Miami, Florida, that BOSS REVOLUTION[SM] was being discontinued but that UDR's PIN Revolution products could serve as a replacement.  (*Id.* ¶ 69).  Defendant Osorno also allegedly attempted to bribe current IDT employees for access to BOSS REVOLUTION[SM] customer lists, and allegedly instructed another UDR employee to offer substantial "bonuses" of up to $250,000.00 to IDT-participating retailers if they agreed to discontinue selling BOSS REVOLUTION[SM] products in favor of UDR's PIN Revolution products.  (*Id.* ¶ 113-14).  Plaintiffs claim that these actions have caused

confusion in the market and have detracted from consumer goodwill towards IDT's BOSS REVOLUTION<sup>SM</sup> products.  (*Id.* ¶ 116).

## III.   LEGAL STANDARDS

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."  *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).  Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief."  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).  However, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations."  *McCargo v. Hall*, No. 11-553, 2011 WL 6725613, *1 (D.N.J. Dec. 20, 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)).  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  Contradictory factual assertions on the part of defendants must be ignored.  *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  A complaint satisfies the plausibility standard when the factual pleadings

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief." *Id.* (internal quotations omitted).

With this standard in mind, the Court analyzes the parties' arguments on dismissal.

## IV.   ANALYSIS

Defendants move to dismiss the following claims:[4] Count Two (alleging false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) against UDR); Count Three (alleging misappropriation of trade secrets and unfair competition against all Defendants); Count Five (alleging injurious falsehood/product disparagement against all Defendants); Count Six (alleging tortious interference with contract against all Defendants); Count Seven (alleging tortious interference with prospective economic advantage against all Defendants); Count Eight (alleging breach of non-disclosure agreement against Rodriguez and A. Gomez); Count Nine (alleging breach of covenant not to compete against A. Gomez); Count Ten (alleging breach of implied covenant of good faith and fair dealing against A. Gomez and Rodriguez); Count Eleven (alleging civil conspiracy against all Defendants); Count Twelve (alleging breach of common law duty not to disclose against all Individual Defendants); Count Thirteen (alleging inevitable disclosure against all Individual Defendants); and Count Fourteen (alleging breach of duty of loyalty against C. Gomez, A. Gomez and Osorno).

### A.  Count Two: False Designation of Origin and Unfair Competition

In Count Two, Plaintiffs seek relief against UDR for alleged violations of their rights under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Accepting the facts of Plaintiffs'

---

[4] The Court notes that the counts in the Complaint are mis-numbered, and there is no Count Four.

Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for false designation of origin and unfair competition under the Lanham Act.  Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Two.

To state a claim of false designation and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must allege (1) a valid and legally protectable mark; (2) that plaintiff owns the mark; and (3) that defendants' use of the mark is likely to create confusion concerning the origin of goods or services.  *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d. 532, 536 (D.N.J. 2008) (citing *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)).[5]  Defendants argue that (1) no false designation occurred because Defendants' mark is not identical to that of Plaintiffs; and (2) the Lanham Act does not provide a cause of action for unfair competition.  (Docket Entry No. 46, Brief in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Verified Complaint for Failure to State a Claim ("Def. Mov. Br.") at 9-10).  Plaintiffs respond that (1) an identical mark is not necessary as long as confusion between the marks is likely; and (2) unfair competition is a well-established cause of action under the Lanham Act.  (Docket Entry No. 52, Plaintiffs Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Opp. Br.") at 13-14).  Plaintiffs prevail on both points.

As an initial matter, unfair competition is a well-established cause of action under the Lanham Act.  *See A & H Sportswear, Inc*, 237 F.3d at  215.  Here, Plaintiffs offer allegations in the Complaint that satisfy every element of their false designation and unfair competition claim under § 43(a) of the Lanham Act.  Plaintiffs allege that they have filed an application with the United States Trademark and Patent Office for registration of its BOSS REVOLUTION[SM]

---

[5]  Defendants cite to the standard for false designation of origination and unfair competition set forth in *Parker v. Google*, 242 F Appx. 833, 838 (3d Cir. 2007).  Because the Court previously utilized the standard set forth above, without objection from the Defendants, (*see IDT Corp. v. Unlimited Recharge, Inc.*, Civil Action No. 11-4992, 2011 WL 6020571, * 5 (D.N.J. Dec. 2, 2011)), for consistency, it will continue to be utilized by the Court.  This standard remains good law in the Third Circuit.

service mark in the Principal Register, (Compl. ¶ 32), satisfying the first two elements of the claim.

In determining the third element of Plaintiffs' claim – the likelihood of confusion between two similar marks – courts have adopted a test involving ten factors (the "Lapp" factors). *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470-71 (3d Cir. 2005). These factors are not exhaustive, and not all may be relevant to all cases. *Id.* (quoting *A & H Sportswear, Inc.*, 237 F.3d at 215). "A district court should utilize the factors that seem appropriate to a given situation." *Id.* (internal quotations omitted). The factors are: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion;(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Id.* at 471.

Plaintiffs' Complaint contains sufficient facts for this Court to evaluate the alleged confusion caused by the similarity between Plaintiffs' and Defendants' marks based on the Lapp factors. The Complaint sets forth depictions of, and detailed descriptions of both Plaintiffs' mark and Defendants' mark, which demonstrate a substantial degree of similarity. (Compl. ¶ 56-63). The Complaint alleges strong market presence and distinctiveness of Plaintiffs' mark (the first

and second Lapp factors).  (*Id.* ¶¶ 31, 33-34).  The Complaint also alleges that studies have shown that IDT customers "indicate strong intent to continue buying and using IDT calling cards" (the ninth Lapp factor).  (*Id.* ¶¶ 36-37).  The Complaint alleges that Defendants promoted and distributed their product "in a way that is intended to cause . . . a likelihood of confusion among consumers" (the fifth and ninth Lapp factors).  (*Id.* ¶¶ 65-69).  Plaintiffs' Complaint also alleges that Defendants utilized IDT's distribution network, customer lists and marketing techniques (the seventh Lapp factor).   (*Id.* ¶¶ 74-88, 91-92).  The Complaint alleges that Defendants specifically targeted retailers already selling IDT's BOSS REVOLUTION[SM] product (the eighth Lapp factor).  (*Id.* ¶ 68-70).  While the Complaint does not allege facts relating to Lapp factors number three, four, six or ten, "no one factor is dispositive."  *Freedom Card*, 432 F.3d at 474 (citation omitted).

Based on the foregoing analysis, the Court finds that Plaintiff has alleged sufficient facts to state a claim for false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) that is plausible on its face.  Defendants' motion to dismiss is therefore denied with respect to Count Two.

### B.  Count Three: Misappropriation of Trade Secrets and Unfair Competition

Count Three requests relief against all Defendants for misappropriation of Plaintiffs' trade secrets.  (Compl. ¶ 130).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for misappropriation of trade secrets.  Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Three.

In order to state a claim for misappropriation of trade secrets under New Jersey law, a plaintiff must establish: "(1) the existence of a trade secret, (2) communicated in confidence by

the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Rohm & Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982). Additionally, New Jersey law requires that the plaintiff show that he took precautions to maintain the secrecy of the trade secret. *Id.* (citing *Sun Dial Corp. v. Rideout,* 108 A.2d 442, 447 (N.J. 1954)). Defendants argue that Plaintiffs' claim for misappropriation of trade secrets is based upon restrictive covenants contained in the Non-Disclosure Agreements, and is therefore barred by the economic loss doctrine. (Def. Mov. Br. at 12). Alternatively, Defendants contend that Count Three must be dismissed because (1) Plaintiffs fail to explain why their trade secrets are different from matters of general knowledge; (2) Plaintiffs fail to allege precautions taken to maintain the secrecy of the trade secret; (3) Plaintiffs fail to allege with specificity why their trade secrets have not lost value; and (4) Plaintiffs fail to allege what specific damages have resulted from disclosure. (Def. Mov. Br. at 14-15). Defendants also argue that the allegations are not specific enough as to Defendants A. Gomez, Osorno, Rodriguez and C. Gomez. (*Id.* at 15). Plaintiffs respond that the economic loss doctrine does not apply in this case, and that they adequately pled each element of the misappropriation of trade secrets claim. (Pl. Opp. Br. at 15-20).

The Court will first address the threshold issue of whether the economic loss doctrine applies to bar Plaintiffs' claim for misappropriation of trade secrets.[6] The economic loss doctrine bars recovery in tort when entitlement to losses only flow from a contract. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 968 A.2d 192, 202 (N.J. Super. 2009)). However, the Federal Rules of Civil

---

[6] This argument only applies to the Individual Defendants who entered into contracts with Plaintiffs and does not include UDR or C. Gomez.

Procedure permit a plaintiff to plead alternative, or even inconsistent, causes of action. Fed. R. Civ. P. 8(d). While a plaintiff may not recover on inconsistent theories, he may include them in the complaint. *See id.* Therefore, while Plaintiffs may not recover on both their contract claims and tort claims, both claims may be included in the complaint and can survive a motion to dismiss. Because Defendants dispute the validity of the contracts (Def. Moving Br. 28), at this stage of the litigation, it would be prejudicial to the Plaintiffs if the Court were to dismiss the tort claims. However, if the Court finds that the disputed contracts are valid, Defendants may revisit this argument at a later stage in this litigation.

The Court next addresses Defendants' other arguments. In New Jersey, a trade secret must be a secret of a particular employer and may not be a matter of general knowledge in the industry. *See Rohm & Haas Co.*, 689 F.2d at 431 (citing Restatement of Torts § 757, comment b (1939)). However, "[e]ven though each and every element of plaintiff's [p]rocess is known to the industry, the combination of those elements may be a trade secret if it produces a product superior to that of competitors." *Id.* at 433 (internal citations and quotations omitted). New Jersey law has considered customer lists and pricing and marketing techniques to be trade secrets. *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1166 (N.J. 2001) ("In New Jersey, customer lists of service businesses have been afforded protection as trade secrets."); *see also Commc'ns Workers of America v. McCormac*, 9 A.3d 1106, 1123 (N.J. Super. 2008) ("A trade secret can consist of aspects of business operations such as pricing and marketing techniques." (internal citation and quotation marks omitted)).

Plaintiffs' Complaint alleges that the Proprietary Information (defined above as including lists of distributors, retailers and agents who transact with IDT to sell the BOSS REVOLUTION[SM] product; lists of end-user consumers of the BOSS REVOLUTION[SM] product;

pricing and marketing strategies for the BOSS REVOLUTION[SM] product; accounting, accounts receivable, and payment records; market demographics for the BOSS REVOLUTION[SM] product; sales and market data; advertising strategies, and market analyses of the impact of advertising for the BOSS REVOLUTION[SM] product (Compl. ¶ 30)) constitutes a trade secret.  (*Id.* ¶ 131-134). Plaintiffs further allege that the Proprietary Information "is not obvious from existing public information or from the product as marketed and is not general or basic information known to the industry."  (*Id.* ¶ 134).  Plaintiffs also allege that they have gone "to great lengths to maintain the confidentiality of the IDT Proprietary Information . . . ."  (*Id.* ¶ 137).  These allegations by Plaintiffs, taken as true, sufficiently indicate the existence of both trade secrets that are not general knowledge in the industry and measures taken to maintain the confidentiality of those trade secrets.  New Jersey does not require Plaintiffs to plead each trade secret with particularity, and therefore the Court is not persuaded by Defendants' arguments to that effect.  *See Oswell v. Morgan Stanley Dean Witter & Co.*, No. 06-5814, 2007 WL 1756027, *6-7 (D.N.J. June 18, 2007).

Defendants' argument that plaintiffs fail to allege with specificity what damages have resulted from disclosure is also without merit.  (Def. Mov. Br. at 14).  A misappropriation of trade secrets claim is not subject to a heightened pleading requirement.  *Osteotech, Inc. v. Biologic, LLC*, Civil Action No. 07-1296, 2008 WL 686318, at *5 (D.N.J. March 7, 2008). Defendants have not cited to any cases requiring heightened pleading for damages in the context of a misappropriation of trade secrets claim.  Therefore, Plaintiffs' allegations that they have suffered damages, (Compl. ¶ 154), is sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Finally, Plaintiffs have made detailed and extensive allegations against the Individual Defendants[7] to survive a motion to dismiss.  For example, Plaintiffs allege that each Individual Defendant had access to the Proprietary Information as former employees, agents and/or consultants of IDT.  (Compl. ¶¶ 74-76, 79, 83, 91).  Plaintiffs have also alleged that each Individual Defendant used that information for the benefit of UDR to the detriment of IDT.  (*See, e.g. id.* at ¶¶ 71, 77, 82, 88, 111-112, 141-154).

For the foregoing reasons, the Court finds that Plaintiffs have alleged sufficient facts to state a claim for misappropriation of trade secrets that is plausible on its face.  Defendants' motion to dismiss is therefore denied with respect to Count Three.

## C.  Count Five[8]: Injurious Falsehood/Product Disparagement

Count Five requests relief against all Defendants for injurious falsehood and product disparagement.  (Compl. ¶ 157).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have not sufficiently stated a plausible claim for injurious falsehood and product disparagement.  Therefore, the Court will grant Defendants' motion to dismiss with respect to Count Five.

In order to state a claim for injurious falsehood/product disparagement[9] under New Jersey law, a plaintiff must establish: "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e. pecuniary harm." *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977). Defendants contend that, with respect to the false allegations element of the claim, Plaintiffs fail

---

[7] Defendants question how Plaintiffs have concluded that C. Gomez is associated with UDR.  (Def. Moving Br. 15, n.5).  The Court, however, must take Plaintiffs' allegations as true.  Plaintiffs have alleged that C. Gomez "assist[s] in the direction of the activities of UDR…"  (Compl. ¶ 77).  As such, the Court will not dismiss the claims against C. Gomez for this reason.

[8] The Court notes that the counts in the Complaint are mis-numbered, and there is no Count Four.

[9] Product disparagement and injurious falsehood are synonymous causes of action.  *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 465 A.2d 953, 957 n.2 (N.J. Super. 1983).

to allege which Defendant made the false statements, what the false statements were, and when the false statements were made.  (Def. Mov. Br. at 16).  Defendants further contend that Plaintiffs fail to allege special damages resulting from the false allegations with the requisite specificity.  (*Id.*).  Plaintiffs respond that an injurious falsehood/product disparagement claim need not be pled with heightened specificity and that they have adequately pled the requisite elements.  (Pl. Opp. Br. at 20-22).

The Court finds that Defendants' argument with respect to special damages is unfounded. In New Jersey, a plaintiff must plead special damages for a product disparagement/injurious falsehood claim with particularity.  *Zinn v. Seruga*, NO. 05-CV-3572, 2006 WL 2135811, *11 (D.N.J. July 28, 2006).  This requires a plaintiff to establish "pecuniary loss that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers." *Graco, Inc. v. PMC Global, Inc.*, Civil Action No. 08-1304, 2009 WL 904010, *35 (D.N.J. March 31, 2009).  Here, Plaintiffs allege that they have "lost customers and prospective customers, as well as valuable goodwill, reputation, market share, and market position." (Compl. ¶ 165).  At this stage of the litigation, Plaintiffs adequately pled special damages.  *See Graco*, 2009 WL 904010, at *35.

Although Plaintiffs adequately pled special damages, their allegations with respect to the remaining elements of the claim cannot survive a motion to dismiss.  Here, Plaintiffs allege that "Defendants have published or caused to be published false statements about IDT's BOSS REVOLUTION[SM]."  (Compl. ¶ 158).  Plaintiffs also allege that "Defendant UDR and its employees or agents, including some of the Individual Defendants, have contacted one or more of IDT's BOSS REVOLUTION[SM] retail customers and prospective customers and falsely conveyed to them that the services offered by Defendant UDR were 'exactly the same' and/or a

'new and improved' version of IDT's BOSS REVOLUTION[SM]." (*Id.* ¶ 68). The Court acknowledges that Plaintiffs name UDR specifically in connection with these allegations. However, Plaintiffs do not make the allegations against any other particular Defendant, only "some of the Individual Defendants." (*Id.*). Without additional information as to which Defendant uttered these false statements, each individual Defendant is not adequately put on notice as to his or her potential liability. *See Gibbs v. Massey*, Civil Action No. 07-3604, 2009 WL 838138, *12 (D.N.J. March 26, 2009). Therefore, the Court must dismiss Count Five without prejudice. Plaintiffs are granted leave to file an amended complaint within thirty days to cure the deficiencies identified above or by motion to amend the complaint if discovery reveals facts relevant to the deficiencies identified above.

### D. Count Six: Tortious Interference with Contract

Count Six requests relief against all Defendants for tortious interference with contract. (Compl. ¶ 171). Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have not sufficiently stated a plausible claim for tortious interference with contract. Therefore, the Court will grant Defendants' motion to dismiss with respect to Count Six.

In order to state a claim for tortious interference with contract under New Jersey law, a plaintiff must establish: "(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." *Amgro, Inc. v. Lincoln General Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010) (quoting *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. 1997)). Defendants argue that Plaintiffs' claim should be dismissed for four reasons: (1) Plaintiffs do not identify a specific contract that is interfered with; (2) Plaintiffs fail to allege specific acts of interference, (3) Plaintiffs fail to allege a lost contract, and (4) Plaintiffs fail to allege specific

16

damages resulting from the alleged interference.  (Def. Mov. Br. at 18-20).  Plaintiffs respond that lack of identification of a specific contract is not grounds for dismissal of a tortious interference with contract claim, that Defendants' improper use of trade secrets constitutes an interference, and that Plaintiffs' allegations of lost sales, good will, growth opportunities, and pecuniary harm sufficiently state damages for this claim.  (Pl. Opp. Br. at 25-26).

New Jersey law permits a claim for tortious interference with contract to survive a motion to dismiss where a plaintiff alleges the existence of a contract but does not plead specific facts identifying it.  *See, e.g.*, *Syncsort Inc. v. Innovative Routines Intern.*, No. Civ. 04-3623, 2005 WL 1076043, *12 (D.N.J. May 6, 2005).  Here, Plaintiffs allege "existing contractual relationships with numerous master agents, distributors, and retailers."  (Compl. ¶ 169).  Plaintiffs also specifically identify one retailer, El Nino Discount, with whom Defendants attempted to interfere with Plaintiffs' relationship.  (*Id.* ¶ 69).  The Court therefore finds that these allegations are sufficient to properly plead the first element of the tortious interference with contract claim.

Furthermore, Plaintiffs allege that Defendants made false statements to IDT retailers and customers, including El Nino Discount, to the effect that BOSS REVOLUTION[SM] was being discontinued and that Defendant UDR's product is "exactly the same . . . with only a name change."  (*Id.* ¶ 71-72; *see also id.* ¶ 68-69).  Plaintiffs also allege damages including "loss of goodwill and reputation."  (*Id.* ¶ 175).  The Court finds that these allegations of interference and damages are sufficient to survive a motion to dismiss.  *See Syncsort*, 2005 WL 1076043, at *13.

Plaintiffs' claim falls short, however, with respect to the third element of a tortious interference with contract claim: the loss of a contract or prospective gain as a result of the interference.  While Plaintiffs allege numerous instances where Defendants interfered with Plaintiffs' alleged existing contracts, Plaintiffs fail to allege that this interference resulted in the

17

loss of a contract or prospective gain.  Therefore, the Court dismisses Count Six without prejudice.  Plaintiff is granted leave to file an amended complaint within thirty days to cure the deficiencies identified above or by motion to amend the complaint if discovery reveals facts relevant to the deficiencies identified above.

### E.  Count Seven: Tortious Interference with Prospective Economic Advantage

Count Seven requests relief against all Defendants for tortious interference with prospective economic advantage.  (Compl. ¶ 179).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for tortious interference with prospective economic advantage.  Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Seven.

In order to state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must establish: "(1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of the interference; and (5) damages resulting from the defendant's interference."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).

In support of Count Seven, Plaintiffs allege that Defendants used the Proprietary Information to lure away IDT customers and made false statements about the health of IDT's business intending to "convince potential customers not to deal with IDT."  (Compl. ¶ 179).  As a result of Defendants' interference, Plaintiffs allege that they have been damaged through diminished goodwill and reputation, and lost customers and retailers.  (*Id.* ¶ 184).

Defendants argue that Plaintiffs have not stated any elements of a tortious interference with prospective economic advantage.  (Def. Mov. Br. at 21).  Specifically, Defendants contend that Plaintiffs have not pled a "protectable interest" in any specific relationship or that Defendants knew of that relationship and internationally interfered.  (*Id.*).  Defendants argue that Plaintiffs' allegation of a reasonable expectation of economic benefit or advantage is at most speculative because Plaintiffs make only vague references to "some 'expansion.'"  (*Id.*).  Further, Defendants contend that Plaintiffs do not allege that the alleged interference actually caused damages, such as interrupted negotiations or lost sales.  (*Id.* at 22).   Plaintiffs respond that the Complaint properly states each element of the claim, and points to specific allegations in the Complaint for support.  (Pl. Opp. Br. at 28-29, 31-32).

Taking all of the allegations in the Complaint as true, as this Court must when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court finds that Plaintiffs have sufficiently alleged a reasonable expectation of economic benefit or advantage.  Plaintiffs allege that the innovations of the BOSS REVOLUTION$^{SM}$ system, including a PIN-less calling card system, partnerships with master agents and retailers, and unique business model, provide them with a leading position in the market.  (Compl. ¶ 28-29).  Plaintiffs also allege that no competitor of IDT enjoys a nationwide market presence like IDT'S BOSS REVOLUTION$^{SM}$, and that no competitor has been able to "independently develop the technology and duplicate IDT's marketing success for a comparable product."  (*Id.* ¶ 43).  These allegations, if true, establish a reasonable expectation of a prospective economic advantage over IDT's competitors in the prepaid, PIN-less calling card market.

Defendants, however, argue that a "reasonable expectation" of continued business expansion is not a protectable interest citing *Valentine v. Bank. of Am.*, No. 09-262, 2010 U.S.

19

Dist. LEXIS 8546, at * 8-9 (D.N.J.  Feb. 1, 2010).  (Def. Moving Br. at 22).  This is simply not true.  In *Valentine*, the Court held that a "speculative claim of lost business, *if unsupported by facts* showing an existing or reasonable prospective economic or contractual relationship does not suffice."  *Id.*  at 10 (emphasis added) (internal citations omitted).  Moreover, Courts have held that there can be a reasonable expectation of benefit "even where the sale is to the public at large."  *Church & Dwight*, No. 10-453, 2010 WL 5239238, at * 3 (D.N.J. Dec. 16, 2010) (citations omitted).  "In short, a complaint must demonstrate that the plaintiff was in 'pursuit of business.'"  *Id.* (quoting *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989)).  Here, as noted above, Plaintiffs have alleged existing economic and contractual relationships and that they were in the "pursuit of business."  (*See* Compl. ¶¶ 28, 29, 43).

Plaintiffs have also sufficiently pled that Defendants knew of the expectation of prospective economic advantage.  In the Complaint, Plaintiffs allege that based on marketing plans, sales data and customer lists, IDT had a reasonable expectation that its BOSS REVOLUTION[SM] product would continue to expand.  (*Id.* ¶¶ 36, 37, 177).  Plaintiffs also allege that Defendants, as prior employees of IDT, had access to this information, (*Id.* ¶¶ 74-76, 78-79, 83-84, 91) and that "each of the Defendants were aware of the prospective economic advantages that IDT expected to continue to enjoy as a result of their previous employment with IDT…."  (*Id.* ¶ 178).  These allegations, if true, establish that Defendants knew of Plaintiffs' expectation of prospective economic advantage to the level of plausibility required under *Twombly*.

The Court also finds that Plaintiffs have pled wrongful, intentional interference.  This particular element requires some allegation that Defendant's conduct was wrongful and intentional.  *See American Millennium Ins. Co. v. First Keystone Risk Retention Group, Inc.,* 332 F. App'x 787, 790-791 (3d Cir. 2009).  Here, Plaintiffs allege that "Defendants maliciously

interfered with IDT's prospective economic advantage by taking the IDT Proprietary Information and using it to lure away IDT's customers and . . . making false statements about the health of IDT's business and the availability of the BOSS REVOLUTION$^{SM}$ product." (Compl. ¶ 179). These allegations are sufficient because they allege wrongful and intentional conduct – lying in order to usurp business from IDT.

Finally, Defendants' assertion that Plaintiffs have not alleged a causal connection between the interference and the resulting damages is incorrect. In the Complaint, Plaintiff alleges loss of goodwill, reputation, and customers, as a result of Defendants' alleged interference – the false statements and use of the Proprietary Information. (*Id.* ¶ 184). Plaintiffs also allege that had it not been for Defendants' interference, Plaintiffs would have continued to service existing customers and would have retained a leading market position. (*Id.* ¶ 181-82).

Accordingly, the Court finds that Plaintiffs have pled sufficient facts to state a plausible claim for tortuous interference with prospective economic advantage. The Court will therefore deny Defendants' motion to dismiss with respect to Count Seven.

**F.  Count Eight: Breach of Non-Disclosure Agreement**

Count Eight requests relief against Rodriguez and A. Gomez for breach of their respective non-disclosure agreements. (Compl. ¶ 187). Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for breach of non-disclosure agreement against both Rodriguez and A. Gomez. Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Eight.

New York law governs both Rodriguez's and A. Gomez's non-disclosure agreements, pursuant to the choice of law provision therein. (Compl. Ex. C at 4, Compl. Ex. D at 5-6). In order to state a claim for a breach of contract under New York law, a plaintiff must establish:

"(1) the existence of a contract, (2) due performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages resulting from the breach." *Renaissance Equity Holding, LLC v. Al-An Elevator Maintenance Corp.*, No. 500724/11, 2012 WL 2731958, *4 n.2 (July 2, 2012) (citing *JP Morgan Chase v. J.H. Elec. Of New York*, 69 A.D.3d 802, 803 (N.Y.A.D. 2010)).  Rodriguez and A. Gomez contend that Plaintiffs fail to identify an action on behalf of either Defendant that constitutes a breach of the non-disclosure agreements because Plaintiffs do not allege improper access to the Proprietary Information.  (Def. Mov. Br. at 23).  Rodriguez and A. Gomez also assert that Plaintiffs do not plead this cause of action with sufficient particularity to put them on notice as to their liability.  (*Id.* at 25).  They contend that Plaintiffs do not plead what confidential information was used and how Rodriguez and A. Gomez used it.  (*Id.* at 26).  Plaintiffs respond that the complaint adequately states a claim and must survive a motion to dismiss.  (Pl. Opp. Br. at 34-36).

The non-disclosure agreements signed by Rodriguez and A. Gomez provide that: "During the Employment and thereafter, the parties agree that Employee will not: (a) use any Confidential Information, [10] however acquired, except as necessary within the scope of Employment with the Company[11] to perform his/her duties . . . ."  (Compl. Ex. C at 2; *see also id.* Ex. D at 3).  In the Complaint, Plaintiffs allege that Rodriguez and A. Gomez breached the non-disclosure agreement by "misappropriating, among other things, the IDT Proprietary Information."  (*Id.* at ¶ 187).  The Proprietary Information includes end-user consumer information, names and contact information for retailers and distributors of BOSS

---

[10] Confidential Information is defined in Rodriguez's non-disclosure agreement as "technical and business information about the Company . . . and their respective clients and customers that is learned by Employee in the course of the Employment . . . including, without limitation, any and all proprietary Inventions, customer and potential customer names, sales information, product plans and designs, licenses and other agreements, marketing and business plans, various other financial and businesses [sic] information of the Company.  (Compl. Ex. C at 2; *see also id.* Ex. D at 1).

[11] Company is defined in Rodriguez's non-disclosure agreement as Defendant UTA.  (Compl. Ex. C at 1; *see also id.* Ex D. at 1).

REVOLUTION$^{SM}$, pricing and marketing strategies, financial records, and sales and market data, (*id.* at ¶¶ 187-188), all of which are protected as Confidential Information under Rodriguez's and A. Gomez's non-disclosure agreements.  (*Id.* Ex. C at 2; *see also id.* Ex. D at 1).  Plaintiffs also allege that Rodriguez and A. Gomez used the Proprietary Information (and therefore the Confidential Information) outside the scope of their employment, which is specifically prohibited by the terms of the Non-Disclosure Agreements.  (*See id.* ¶¶ 80, 92, 97, 101, 112; *see also id.* Ex. C at 2; *id.* Ex. D at 3).  Therefore, the Court finds that Plaintiffs have adequately pled breach of the non-disclosure agreement with respect to Defendants Rodriguez and A. Gomez.  Accordingly, the Court will deny Defendants' motion to dismiss with respect to Count Eight.

### G.  Count Nine: Breach of Covenant Not to Compete

Count Nine requests relief against A. Gomez for breach of his covenant not to compete. (Compl. ¶ 192).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for breach of the covenant not to compete against A. Gomez.  Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Nine.

As noted above, New York law governs A. Gomez's non-compete agreement, pursuant to the choice of law provision therein.  (Compl. Ex. D at 5-6).  A. Gomez contends that Plaintiffs do not plead a breach because (1) the Complaint makes "no allegations . . . that [A.] Gomez used any specific IDT Proprietary Information prior to June 16, 2011 – the expiration date of the restrictive covenant" (Def. Mov. Br. at 29); and (2) "the mere forming of a corporation, and nothing more, is not a per se indication of competition, whether indirect or direct."  (*Id.*). Plaintiffs respond that the Complaint properly alleges each required element to state a claim against A. Gomez for breach of a non-compete agreement.  (Pl. Opp. Br. at 36-38).

A. Gomez's non-compete agreement provides, in relevant part:

"… for a period of two (2) years immediately following the termination of [A. Gomez's] Employment with the Company, he shall not . . . directly or indirectly, either as an employee, employer, consultant, independent contractor, agent, principal, partner, stockholder, officer, director or in any other individual or representative capacity, engage or participate, invest in or become employed by or otherwise in any way assist or encourage any entity or person, which engages in any activity in competition directly or indirectly with the business of the Company, including without limitation by engaging in or otherwise involving: (i) the sale or distribution or any telecommunications products . . . (iii) the sale or distribution of any products, equipment or services targeted to one or more of the Company's primary customer bases . . .

(Compl. Ex. D at 4).

Here, Plaintiffs allege that A. Gomez's employment with Defendant UTA terminated on or around June 16, 2009.  (Compl. ¶ 191).  Plaintiffs also allege that A. Gomez launched UDR on or around October 10, 2010 for the purpose of exploiting the Proprietary Information to compete with IDT.  (*Id.* ¶ 46, 192-93).  This launch of UDR occurred less than two years after A. Gomez terminated his employment.  A. Gomez is an officer of UDR.  (*Id.* ¶ 112).  These facts, taken together, establish that A. Gomez became employed as an officer by UDR, which engages in competition with IDT, prior to the expiration of the covenant not to compete.  This constitutes a breach of the non-compete clause.  Contrary to Defendants' argument, it is not dispositive that the Complaint does not allege use of the Proprietary Information prior to the expiration of the non-compete agreement.  The non-compete agreement prohibits A. Gomez from "becom[ing] employed by or otherwise in any way assist[ing] or encourage[ing] any entity or person, which engages in any activity in competition directly or indirectly with the . . . Company."  (*Id.* Ex. D at 4).   A. Gomez did just that, by launching and becoming an officer of UDR prior to the expiration of the non-compete agreement.

24

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently pled breach of the covenant not to compete with respect to A. Gomez.   Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Nine.

### H.  Count Ten: Breach of Implied Covenant of Good Faith and Fair Dealing

Count Ten requests relief against Rodriguez and A. Gomez for breach of the implied covenant of good faith and fair dealing related to their respective non-disclosure agreements. (Compl. ¶ 197-98).   Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs fail to state a plausible claim for breach of the implied covenant of good faith and fair dealing against both Rodriguez and A. Gomez.   Therefore, the Court will grant Defendants' motion to dismiss with respect to Count Ten.

Since New York law governs Rodriguez's and A. Gomez's non-disclosure and non-compete agreements pursuant to the choice of law provisions therein, New York law also governs the implied covenant of good faith and fair dealing related to those contracts.   Under New York law, every contract contains an implied covenant of good faith and fair dealing. *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). However, breach of that covenant is merely a breach of the underlying contract. *Id.*   Therefore, Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing is entirely subsumed under Counts Eight and Nine of the Complaint – Plaintiffs' claims against Rodriguez and A. Gomez for breach of their respective non-disclosure agreements, and against A. Gomez for breach of the covenant not to compete.

For the reasons set forth above, the Court will grant Defendants' motion to dismiss with respect to Count Ten.

### I.  Count Eleven: Civil Conspiracy

Count Eleven requests relief against all Defendants for civil conspiracy.  (Compl. ¶ 202). Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have not stated a claim for civil conspiracy against all Defendants.  Therefore, the Court will grant Defendants' motion to dismiss with respect to Count Eleven.

In order to successfully state a civil conspiracy claim under New Jersey law, Plaintiffs must establish: a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage."  *Amgro, Inc. v. Lincoln General Ins. Co.*, 361 F. App'x 338, 347 n.11 (3d Cir. 2010) (quoting *LoBiondo v. Schwartz*, 970 A.2d 1007, 1029 (N.J. 2009)).  Defendants argue that they could not have engaged in a conspiracy with UDR because a corporation cannot conspire with its employees when those employees are acting for the benefit of the corporation. (Def. Mov. Br. at 32).  Defendants also argue that Plaintiffs' failure to state an underlying wrong amounts to failure to plead a conspiracy.  (*Id.* at 32-33).  In response, Plaintiffs point to their allegations that each Defendant was acting for his or her own personal benefit.  (Pl. Opp. Br. at 40).  Plaintiffs also contend that Carlos Gomez is not an alleged employee of UDR, and therefore may freely conspire with UDR.  (*Id.* at 41).  Finally, Plaintiffs assert that the Complaint alleges sufficient underlying wrongs to support a conspiracy claim.  (*Id.* at 41-42).

A civil conspiracy may not be maintained between a corporation and one who acts as its agent.  *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999).  This doctrine applies if an employee participates in the conspiracy in the course and scope of employment.  *Id.* at 412.  In this case, A. Gomez, Rodriguez, and Osorno were acting within the scope of their employment

26

with UDR when engaging in the acts alleged by Plaintiffs.  (*See* Compl. ¶ 111-12).  In addition, despite Plaintiffs' contentions to the contrary, C. Gomez was also acting in his capacity as an agent of UDR when engaging in the acts alleged.  The complaint explicitly alleges that each Individual Defendant "joined together in working for Defendant UDR."  (*See id.* ¶ 111).  Whether or not Defendants did so for their own benefit is immaterial, as each alleged act in connection with the conspiracy was done within the scope of employment with UDR.  Therefore, UDR is unable to maintain a civil conspiracy with these four Defendants, and Count Eleven is dismissed with respect to Defendant UDR.

With respect to the alleged conspiracy among A. Gomez, C. Gomez, Osorno and Rodriguez, the allegations in Plaintiffs' complaint are simply too vague to survive a motion to dismiss.  While Plaintiffs do allege that these Defendants "combined with a common purpose," (Compl. ¶ 202), they not make explicitly clear what the actual agreement consisted of, or how the agreement was made.  Plaintiffs must allege an actual agreement among Defendants for their civil conspiracy claim to survive a motion to dismiss.  *See Hauptmann v. Wilentz*, 570 F. Supp. 351, 374 (D.N.J. 1983).  Therefore, Count Eleven is dismissed without prejudice with respect to Defendants A. Gomez, C. Gomez, Osorno and Rodriguez.  Plaintiffs are granted leave to file an amended complaint within thirty days to cure the deficiencies identified above.

### J.  Count Twelve: Breach of Common Law Duty Not to Disclose

Count Twelve requests relief against the Individual Defendants for breach of their respective common law duties not to disclose. (Compl. ¶ 187).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that the claim for breach of the common law duty not to disclose is entirely subsumed by the claim for misappropriation of trade secrets under Count

Three, and/or the claim for breach of duty of loyalty under Count Fourteen.  Therefore, the Court will grant Defendants' motion to dismiss with respect to Count Twelve.

### K.  Count Thirteen: Inevitable Disclosure

Count Thirteen requests relief against all Individual Defendants for inevitable disclosure. (Compl. ¶ 214).  The Court is unable to find a case which acknowledges inevitable disclosure as a viable cause of action in New Jersey.  The case law cited by Plaintiff refers to inevitable disclosure as a doctrine that may be applied in the context of independent causes of action to award injunctive relief.  (Pl. Opp. Br. at 45-46).  These cases do not establish inevitable disclosure as an independent cause of action.  Therefore, the Court will grant Defendant's motion to dismiss with respect to Count Thirteen.

### L.  Count Fourteen: Breach of Duty of Loyalty

Count Fourteen requests relief against A. Gomez, C. Gomez and Osorno for breach of their respective duties of loyalty.  (Compl. ¶ 220).  Accepting the facts of Plaintiffs' Complaint as true, the Court finds that Plaintiffs have sufficiently stated a plausible claim for breach of duty of loyalty against each of A. Gomez, C. Gomez and Osorno.  Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Fourteen.

Under New Jersey law, "[a]n employee owes a duty of loyalty to the employer and must not, while employed, act contrary to the employer's interest."  *P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, L.L.C.*, Civil Action No. 04-4554, 2007 WL 708978, *12 (D.N.J. March 5, 2007) (quoting *Chernow v. Reyes*, 570 A.2d 1282, 1284 (N.J. Super. 1990)).  An employee must not, while employed, compete with the employer's business. *Id.*  The employee's common law duty of loyalty also prohibits him from disclosing trade secrets or confidential information of his employer, even after the termination of his employment.  *See*

*id.* (citing *Sun Dial Corp. v. Rideout*, 108 A.2d 442, 446 (N.J. 1954)).  In support of their motion to dismiss, Defendants argue that the Complaint fails to state allegations against any specific Defendant that would constitute a breach of loyalty.  (Def. Mov. Br. at 36).  Defendants also contend that this claim is barred by the economic loss doctrine, because it is duplicative of the claims for breach of the Non-Disclosure Agreements.  (Def. Mov. Br. at 39).  Plaintiffs point to specific allegations in the complaint against each Defendant and argue that those allegations sustain a claim for breach of the duty of loyalty against each of A. Gomez, C. Gomez and Osorno.  (Pl. Opp. Br. at 49).

As a threshold issue, the Court will not dismiss this claim based on the economic loss doctrine because, as noted above, Plaintiffs may plead in the alternative.  Fed. R. Civ. P. 8(d).  Moreover, the economic loss doctrine would only apply to the Individual Defendants who entered into a contract with Plaintiffs.  Nonetheless, Defendants may revisit this issue at a later stage in the litigation.

Therefore, the Court will consider whether Plaintiffs have adequately pled breach of duty of loyalty against A. Gomez, C. Gomez[12] and Osorno.  The Complaint alleges that A. Gomez and C. Gomez used the Proprietary Information, to which they had access pursuant to their prior employment with UTA, to target IDT's customers and to create confusion in the market as to the availability of IDT's BOSS REVOLUTION[SM] products.  (Compl. ¶¶ 71, 74-77, 78-82).  Plaintiffs allege that Osorno used the Proprietary Information, to which she had access pursuant to her prior employment with UTA, to "contact IDT's customers and inform them that UDR's product is exactly the same as IDT's product with only a name change and that BOSS

---

[12] While Plaintiffs contend that C. Gomez is not an employee of UDR, (Pl. Opp. Br. at 41), the Complaint states that the Individual Defendants "joined together in working for Defendant UDR."  (Compl. ¶ 111).  Since the Court must take all allegations in the Complaint as true when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes that C. Gomez is employed in some capacity by UDR.

REVOLUTION[SM] was being discontinued." (*Id.* ¶¶ 71, 83-86).   Plaintiffs also allege that Osorno attempted to bribe a current IDT employee in order to obtain updated BOSS REVOLUTION[SM] customer lists, and directed another individual to offer bonuses to retailers if they agreed to begin selling UDR's products instead of BOSS REVOLUTION[SM] products. (*Id.* ¶ 113-114).

Contrary to Defendants' arguments, these allegations sufficiently state a claim for breach of duty of loyalty.   Plaintiffs allege that A. Gomez, C. Gomez and Osorno used IDT's protected information in order to compete with IDT after termination of employment there.   Plaintiffs also allege that Osorno attempted to bribe current IDT employees for additional protected information.   These acts were contrary to Plaintiffs' interests, and therefore constitute a breach of the duty of loyalty.

For the reasons stated above, the Court finds that Plaintiffs have sufficiently pled breach of the duty of loyalty against A. Gomez, C. Gomez and Osorno.   Therefore, the Court will deny Defendants' motion to dismiss with respect to Count Fourteen.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.

**Dated:**  September 13, 2012                    */s/ Esther Salas*
                                                 **Esther Salas, U.S.D.J.**